<u>NOT FOR PUBLICATION</u>

United States District Court<br>for the District of New Jersey

| | |
|---|---|
| NATALIE A. WILLIAMS, ALAN J. SETNESKA<br><br>      Plaintiffs,<br><br>vs.<br><br>PRESSLER AND PRESSLER, LLP<br><br>      Defendant. | Civil No.: 11-7296 (KSH)<br><br><u>Opinion</u> |

**<u>Katharine S. Hayden, U.S.D.J.</u>**

  The Fair Debt Collection Practices Act ("FDCPA," 15 U.S.C. § 1692 *et seq.*), enacted in 1977, "prohibits the use of deception in the debt-collection process." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). The plaintiffs in this lawsuit, Natalie Williams and Alan Setneska ("Williams" and "Setneska" separately; together, "plaintiffs"), contend that the defendant, New Jersey law firm Pressler & Pressler LLP ("Pressler"), violated FDCPA when it attempted to collect on a debt owed to non-party New Century Financial Services, Inc. ("New Century"). As framed by plaintiffs, "[t]his case is [presently] about whether a consumer collection law firm's settlement letter, sent during the pendency of a collection lawsuit[,] . . . was unlawfully false and misleading." (Pls.' Moving Br. 1, ECF No. 31-1.)

  Plaintiffs now move for certification of a Fed. R. Civ. P. 23(b)(3) class, which Pressler opposes. Because plaintiffs have met their burden under Rule 23, the class will be certified.

  **I.**  **<u>Background</u>**

    **A) Debts and Collection Attempts**

1

For Williams, the story of this suit begins on the day "[m]any years ago" when she applied for a Wal-Mart credit card to be used for groceries and school supplies. After a time, Williams was "unable to continue paying the account," and it was closed. (Williams Decl. ¶¶ 4–6, ECF No. 31-2.)

In November 2010, Williams received a letter from Pressler telling her that the firm's client, New Century, had purchased her outstanding debt, and Pressler was in charge of its collection. (*See* Am. Compl. ¶ 33 & Ex. 1, ECF No. 19.) About a month and a half later, Pressler sued Williams in Hudson County Superior Court. Ralph Gulko, an attorney at Pressler, signed the complaint, representing to the best of his knowledge that its allegations were accurate. (*See, e.g.*, Am. Compl. ¶¶ 35, 38 & Ex. 2.) Proceeding *pro se*, Williams answered. (Am. Compl. ¶ 43 & Ex. 3.)

Williams then received a settlement letter[1] from Pressler—which would become of great significance to the present litigation. The letter offered her a discount (a "significant savings" of 25%) on the amount allegedly owed, conditioned on her paying before January 25, 2011. Because choosing this course would "satisfy the pending lawsuit" and Williams's indebtedness, Pressler represented that, upon payment, "[p]roof that the debt has been paid will be sent to the [Superior Court] and . . . to you so that you can advise the credit bureau." (Am. Compl. ¶ 45 & Ex. 4.)

---

[1] As the Third Circuit has explained:

> Some creative collectors, convinced that conflict is counterproductive, choose conciliation over confrontation. They do this through communications that are civil and cajoling, yet conforming with the statute—"settlement letters." These notices advise the debtor that he may settle the claim by paying a percentage of the amount owed rather than the total. . . . Nevertheless, in keeping with the statutory requirements, collection agencies "may not be deceitful in the presentation of th[e] settlement offer."

*Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008) (quoting *Goswami v. Am. Collections Enter.*, 377 F.3d 488, 496 (5th Cir. 2004)).

2

Williams did not take Pressler up on its offer. Eventually, after she moved for dismissal of the lawsuit with prejudice, the case was dismissed. (*See* Am. Compl. ¶¶ 60–64.)

Setneska's tale is similar. His debt arose from a Citibank line of credit that he was unable to pay. (Setneska Decl. ¶ 4, ECF No. 31-3.) The debt was acquired by New Century, Setneska was sued by Pressler, and Setneska answered *pro se*. (Am. Compl. ¶¶ 78–87 & Exs. 5–6.) And Setneska received a similar settlement letter containing the language excerpted above. (Am. Compl. ¶ 89–91 & Ex. 7.)

### B) **Williams and Setneska Sue Pressler**

Williams commenced this action in December 2011; Setneska was added via amended complaint in July 2012. Together, plaintiffs alleged that Pressler's conduct in the two debt collections described above violated FDCPA.

In the complaint, Williams asserted that 1) Gulko's certification of the veracity of Pressler's Superior Court claims was "false," because "Gulko signs so many complaints that it is either physically impossible or . . . highly improbabl[e] that he read the Williams Collection Complaint"; 2) the "filing of the Williams Collection Complaint on a time-barred debt" was "unfair or unconscionable"; 3) an earlier representation in the state suit that Williams had "assented to [a] Stipulation of Dismissal"—when, in fact, she had not done so—was false; and 4) the implication in the settlement letter "that, by agreeing to settle, WILLIAMS could remove negative information from her credit report" was misleading. (Am. Compl. ¶¶ 39–40, 57–60, 70.01–.04.). Setneska's allegations were narrower, attacking the Gulko representation and the language in the settlement letter only. (*See* Am. Compl. ¶¶ 97.01–.02.). Plaintiffs premised their claims on 15 U.S.C. §§ 1692e and f, provisions of FDCPA that prohibit the use of "false,

3

deceptive, or misleading representation or means" and "unfair or unconscionable means," respectively, in connection with collecting a debt.

The amended complaint also contained class allegations that Pressler sent settlement letters containing the allegedly misleading "proof that the debt has been paid" language to a broader base of "consumers who have filed a pro se answer to a complaint filed by [Pressler] on behalf of New Century [] in the Superior Court." Plaintiffs proposed a class consisting of all natural persons fitting that description, subject to certain exclusionary criteria. (*See* Am. Compl. ¶¶ 99, 102.) The proposed class period spanned December 17, 2010 through December 2, 2012, and the proposed "class claims" consisted of "all causes of action arising from" letters substantially similar to those received by the named plaintiffs. (Am. Compl. ¶¶ 103–04.)

In their prayer for relief, plaintiffs sought statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) (individually) and (a)(2)(B) (for the class), as well as costs and fees pursuant to 15 U.S.C. § 1692k(a)(3). Williams separately sought actual damages pursuant to 15 U.S.C. § 1692k(a)(1), but only in the event that no class was certified. (Am. Compl. ¶¶ 109.01–.07.)

Pressler answered the complaint (*see generally* Answer, ECF No. 23), and the parties engaged in discovery.

### C) Class Certification Proceedings and Submissions

After the close of discovery, plaintiffs filed this motion to certify a class pursuant to Fed. R. Civ. P. 23(b). Their motion expands upon the allegations in the amended complaint. According to plaintiffs, New Century does not, as a general matter, report a delinquent account to a credit-reporting agency if the consumer either disputes the debt or files an answer to a collection complaint. (Pls.' Moving Br. 8, ECF No. 31-1.) And by means of an "automatic process," the filing of an answer serves to remove any report previously furnished by New

Century to an agency. (Pls.' Moving Br. 8.) Thus plaintiffs argue: "Based on New Century's automated practices, because the settlement letters were sent to Williams and Setneska, respectively, after they had each filed an answer to their respective collection complaints, either New Century never reported the accounts or all previously reported information had been deleted." (Pls.' Moving Br. 9.) By extension, the settlement letters the proposed class of plaintiffs received were innately deceptive because "the least sophisticated consumer would conclude that (1) something about the lawsuit or New Century's claim was on his or her credit report and (2) forwarding that proof to the credit reporting agencies would benefit the consumer." (Pls.' Moving Br. 9.)

Repeating substantially the "class claims" and class definitions discussed above, plaintiffs argue that the requirements of Federal Rule of Civil Procedure 23 (which governs class certification) are satisfied, and hence that class certification is warranted. Relying in part on Pressler's representation that 75 separate individuals received the settlement letter "post answer" on a New Century account (*see* Pls.' Moving Br. 17; Resp. to Interrog. 6, ECF No. 31-4), plaintiffs contend that they have articulated a manageable, ascertainable class; that the named plaintiffs are appropriate class representatives; that class counsel will be an able steward; that common questions of law and fact predominate within the proposed class; and that a class action is the superior method for adjudicating this dispute. (*See* Pls.' Moving Br. 17–18, 26–40.) Williams submits an affidavit asserting that she will not pursue her individual claims "if the Court allows this case to go forward as a class action and the class claims are successful." (Williams Decl. ¶ 19.) Also, plaintiffs' moving brief contains a lengthy discussion of the underlying merits of the case, both legal and factual. (*See, e.g.*, Pls.' Moving Br. 3–17.)

In opposing, Pressler spends some time arguing about the underlying merits of the relevant claim. (*See, e.g.*, Pressler's Resp. Br. 6, ECF No. 38 ("There is no language in the letter advising a consumer that they are required to speak to or send anything to the credit bureaus.").) But more significantly, Pressler premises a large portion of its response on the theory that "on several instances a 'Settlement Letter' was sent *prior* to [Pressler] having knowledge that an Answer was filed." (Pressler's Resp. Br. 12 (emphasis added).) As a consequence, instead of 75 individuals, the "putative class" contains only 31 individuals—and might only consist of two. (Pressler's Resp. Br. 13.)

Separately, Pressler asserts that plaintiffs are not adequate class representatives because neither appears to fully understand the present lawsuit and the ramifications of class certification. (Pressler's Resp. Br. 19–22.) For example, Pressler emphasizes that Williams, in her deposition, seemed to think that the suit was about the statute of limitations running on her debt and not the language in the settlement letter. (Pressler's Resp. Br. 20–21 (quoting Williams Dep. 50:8–15, ECF No. 38-3).)

Finally, Pressler attacks the suitability of class counsel because counsel has "failed to recognize" the pendency of "another significant matter" currently before the District of New Jersey: *DeFazio v. Pressler & Pressler, L.L.P.*, D.N.J. Civ. No. 2:10-cv-03602, a case involving attempts to certify a settlement class. Pressler maintains that the *DeFazio* joint class-settlement motion, if granted, "would encompass all potential putative class members encompassed in the instant action." (Pressler's Moving Br. 22.)

In response to these revelations, the parties conferred with then-Magistrate-Judge Patty Shwartz and agreed to return to the original understanding contained in Pressler's interrogatory

responses.  (*See generally* Feb. 27, 2013 Tr., ECF No. 43.)  Accordingly, the parties stipulated as follows:

> 1) Pressler "does not dispute [p]laintiffs' assertion that they have met the requirement for numerosity under Fed. R. Civ. P. 23," and
>
> 2) "If the class is certified, there are 75 individuals who fit the class definition."

(Feb. 27, 2013 Order, ECF No. 45.)  Plaintiffs' reply reflects this renewed state of affairs.  In addition, plaintiffs point out that, because Pressler so heavily relied on its revised (but since abandoned) accounting in its response brief, the majority of plaintiffs' class-certification arguments are now "unopposed."  (*See* Pls.' Reply Br. 2, ECF No. 44.)

## II.     Jurisdiction

Plaintiffs bring their claims pursuant to FDCPA, a part of which, 15 U.S.C. § 1692k(d), grants "any appropriate United States district court" jurisdiction to "enforce any liability created by" the law.  Accordingly, this Court exercises its federal-question jurisdiction under 28 U.S.C. § 1331.  *See Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 996 (3d Cir. 2011).  Pressler is a cognizable defendant under the FDCPA as amended.  *See Dutton v. Wolpoff & Abramson*, 5 F.3d 649, 652 (3d Cir. 1993).

## III.    Discussion

### A) General Principles

"To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s . . . prerequisites of numerosity, commonality, typicality, and adequacy of representation . . . and must also establish that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (requiring a trial court's "rigorous" analysis). But before reaching an inquiry under Rule 23(a) and (b), a court must "clearly define[] the parameters of the class and the claims to be given class treatment, as required by Rule 23(c)(1)(B)," and must also determine "whether the class [is] objectively ascertainable." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

Unpacking the above: in order to certify the class proposed by plaintiffs, this Court must analyze the various Rule 23(a) and 23(b) factors, along with the other requirements of the Rule, and determine whether plaintiffs have met each facet demanded of them. If factual findings are required, plaintiffs must present enough to satisfy a preponderance of the evidence standard. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008). And once a class has been certified, a court must approve class counsel in accordance with Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132–33 (3d Cir. 2010). But when the parties "do not dispute the adequacy of class counsel, [a court may] consider the adequacy requirement strictly through the lens of Rule 23(a)(4)." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 n.13 (3d Cir. 2012).

### B) Relevance of the Merits of Plaintiffs' Case

Throughout, the parties have expended much effort discussing the legal and factual merits of plaintiffs' allegations—for example, debating whether the tendered settlement letter

8

actually was misleading under the prevailing legal framework. Whatever the fluctuating state of class action law, it is plain that dispositive questions of merit are not to be resolved at this stage in the present case. Rather, as the Third Circuit has explained, "there is no 'claims' or 'merits' litmus test incorporated into the predominance inquiry beyond what is necessary to determine preliminarily whether certain elements will necessitate individual or common proof." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1876 (2012). The merits underlying the cause of action need be reached only to the extent that they are "enmeshed" with the certification inquiry. *Behrend*, 133 S. Ct. at 1432 (citations omitted). Thus:

> While the Supreme Court's pronouncements in *Behrend* and *Dukes* require evidentiary proof that the elements of Rule 23(a) and (b)(3) are met in this instance, they do not go so far as to require the plaintiff seeking class certification to also prove that the class will succeed on its claims; a summary judgment motion remains the vehicle for determining sufficiency of the plaintiff's evidence before trial, and no summary judgment motion is presented here.

*Bright v. Asset Acceptance, Inc.*, No. 11-5846, 2013 U.S. Dist. LEXIS 108432, at *15 (D.N.J. Aug. 1, 2013) (Simandle, C.J.); *see also Amgen*, 133 S. Ct. at 1195 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *Sullivan*, 667 F.3d at 305 ("An analysis into the legal viability of asserted claims is properly considered through a motion to dismiss under Rule 12(b) or summary judgment pursuant to Rule 56, not as part of a Rule 23 certification process.").

### C) Rule 23(a) Inquiry

#### 1) *Class Definition and Ascertainability*

The two "preliminary" Rule 23(a) considerations may be quickly disposed of. Plaintiffs propose the following definition for the putative class:

> Each natural person who was named as a defendant in a complaint filed by PRESSLER in the Superior Court of New Jersey on behalf of New Century Financial Services, Inc. who were sent a letter after filing an answer to the complaint which letter was not returned to PRESSLER by the postal service and was substantially similar to [plaintiffs'] Exhibits 4 and 7 and contained the sentence "Proof that the debt has been paid will be sent to the court and copy to you so that you can advise the credit bureau" excluding, however, such persons who, prior to the date that this action is certified to proceed as a class, either:
> A. died,
> B. filed for bankruptcy,
> C. filed a claim against PRESSLER in any action or arbitration alleging that PRESSLER violated the FDCPA, or
> D. signed a release of claims against PRESSLER.

(*See, e.g.*, Proposed Order 2–3, ECF No. 31-5.) The proposed class period runs from December 17, 2010, through July 2, 2012 (the date the amended complaint was filed). And claims are to be defined as "[a]ll causes of action" arising from the Pressler settlement letters—although plaintiffs do not appear to have proposed anything but objections to the "credit bureau" language contained therein.

The definition proposed by plaintiffs is both ascertainable and bounded. It rests on objective, narrow criteria; it is limited in both space and time; and it relies, in part, on Pressler's record keeping, which allows Pressler to identify persons matching the above description. *Cf. Marcus*, 687 F.3d at 593 ("Some courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails."). Indeed, Pressler disputes neither the class definition nor the scope of the class claims. In short, plaintiffs have satisfied the preliminary Rule 23(a) considerations.

*2) Numerosity (Fed. R. Civ. P. 23(a)(1))*

The parties have stipulated that the numerosity requirement is met. Nevertheless, given the requirement of a "rigorous" analysis of the proofs presented, *see Amgen*, 133 S. Ct. at 1194, the Court must be independently assured that the class is so numerous that joinder of all

10

members is impractical. *See Drennan v. PNC Bank, NA*, 622 F.3d 275, 291 (3d Cir. 2010) (quotation marks & citations omitted); *see also Estate of Sanford v. Comm'r*, 308 U.S. 39, 51 (1939) (observing that a court is "not bound to accept, as controlling, stipulations as to questions of law"). "When determining whether numerosity is satisfied, a court should consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits." *Bright*, 2013 U.S. Dist. LEXIS 108432, at *22–23 (quotation marks & citations omitted).

According to the stipulation, 75 individuals meet the proposed class definition, which exceeds a baseline class of 40, the general signifier of numerosity, *see Marcus*, 687 F.3d at 595. Numerosity is therefore satisfied.[2]

### 3) Commonality (Fed. R. Civ. P. 23(a)(2))

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (internal quotation marks omitted). "For purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 2556.

As this Court has observed, "[t]he commonality requirement of Rule 23(a)(2) tends to overlap significantly with the predominance inquiry of Rule 23(b)(3)." *Grullon v. Bank of Am., N.A.*, No. 10-5427, 2013 U.S. Dist. LEXIS 48394, at *48 (D.N.J. Mar. 28, 2013) (Hayden, J.); *see also Hayes v. Wal-Mart Stores, Inc.*, No. 12-2522, ___ F.3d ___, 2013 U.S. App. LEXIS

---

[2] It is troubling, however, that the stipulation appears to contradict Pressler's earlier development of the factual record. Courts have decided that parties can stipulate to numerosity. *See, e.g.*, *Wesley v. Cavalry Invs., LLC,* No. 05-3523, 2006 U.S. Dist. LEXIS 69561, at *10 n.3 (E.D. Pa. Sept. 27, 2006). On the other hand, parties may not stipulate to facts that do not exist. *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir. 1990) (citing *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984)). Recognizing that "[a] party is normally bound by its stipulation of facts," *Block v. City of L.A.*, 253 F.3d 410, 419 n.2 (9th Cir. 2001), and because the stipulation was "entered into freely and fairly, and approved by the court," *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998) (citation & internal quotation marks omitted), the Court deems the stipulation to have "replaced" Pressler's contrary version of facts contained in its opposition papers for the purposes of this class-certification decision. *But see In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("[T]he determination as to a Rule 23 requirement is made only for purposes of class certification and is not binding on the trier of facts, even if that trier is the class certification judge.")

15959, at *23–24 (3d Cir. N.J. Aug. 2, 2013). Accordingly, this factor will be discussed in tandem with the predominance factor of Rule 23(b)(3), below.

    *4) Typicality (Fed. R. Civ. P. 23(a)(3))*

Demonstrating typicality requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry ensures that the incentives of the plaintiffs are aligned with those of the class and are not antagonistic, but factual differences "will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (internal quotation marks and citations omitted).

Plaintiffs argue that they have met the typicality threshold because, among other things, "the letter was sent to collection case defendants after those defendants filed an answer to a complaint filed by New Century and the letter contained the same sentence concerning Pressler sending something to be forwarded to credit bureaus." (Pls.'s Moving Br. 32.) They note, too, that while they originally raised individual claims, they are willing to waive those in order to pursue, as a class, their claims based on the settlement letter. Pressler disputes this by invoking their numerosity-related critique that discontinuities are more present in the putative class than originally appeared.

As a preliminary matter, Pressler's numerosity stipulation prevents it from "rais[ing] the failure to demonstrate numerosity as a hurdle to class certification, even under the guise of typicality or adequacy." *Mazzei v. Money Store*, 288 F.R.D. 45, 61 n.16 (S.D.N.Y. 2012). But beyond that, it is plainly evident that plaintiffs' claims, especially as narrowed by their class-certification concessions, are precisely aligned with those of the proposed class. If plaintiffs

allege that the settlement letter is in contravention of FDCPA, while defining the class as those persons who have received the same letter, logic suggests that those other recipients would share the same cause of action arising from that letter—especially because, as plaintiffs argue (and as is discussed further below), FDCPA is akin to a "strict liability" statute. *See Glover v. FDIC*, 698 F.3d 139, 149 (3d Cir. 2012). Plaintiffs have satisfied the typicality requirement.

*5) Adequacy (Fed. R. Civ. P. 23(a)(4)*

The final Rule 23(a) inquiry, adequacy, is also the most hotly contested by the parties. This test has two purposes: determining if the named plaintiffs have the ability and incentive to represent vigorously the class members, and ensuring that the interests of the named plaintiffs do not diverge from those of the class. *See Larson v. AT&T Mobility LLC*, 687 F.3d 109, 131–32 (3d Cir. 2012). In service of the former, "frequent considerations include the proposed representative's knowledge of the case, interest in and enthusiasm for the litigation and for representing the class, her willingness to respond to interrogatories and depositions, and her understanding of the role and duties of a class representative." Newberg on Class Actions § 3.54.

Plaintiffs assure the Court that they are without conflict. "Indeed," they emphasize, "[p]laintiffs' interests and the class's interests are the same and not antagonistic": both groups seek "damages awardable under the FDCPA," and "[p]laintiffs' pursuit of those damages is not in conflict with the class's objectives." (Pls.'s Moving Br. 35.)

Pressler, by contrast, focuses not on conflict but on capability. Attaching excerpts from plaintiffs' depositions to its response, Pressler charges that their testimony reveals their ignorance of the case, its posture, and the claims to be pursued by the class. For example, Setneska appeared to concede that he lacked "understanding of what the lawsuit is about" outside

13

of what he had learned from speaking to his attorney.  (Setneska Dep. 39:20–23, ECF No. 38-2.) And Williams represented that this case was "about" an account that had "already passed the [s]tatute of [l]imitations." (Williams Dep. 50:13–15, ECF No. 38-3; *see also* Williams Dep. 52:22–24.)  The limitations issue, Williams said, was "the main premise [of the case] in my interpretation." (Williams Dep. 54:13–14.)  However, Williams would say later that she understood the "class" to be about, at least in part, "a letter that [she] received." (Williams Dep. 183:9–15, ECF No. 38-4.)  Finally, Pressler notes that Setneska "had a judgment against him," and that his possible interest in settling creates a conflict with his class representation. (Pressler's Moving Br. 20.)

"A class representative need only possess 'a minimal degree of knowledge necessary to meet the adequacy standard.'" *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (quoting *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 119 (D.N.J. 2003) (Brotman, J.)).  The cases Pressler cites that suggest to the contrary are generally unavailing.  Although acknowledging that a court outside of this Circuit has suggested that representative plaintiffs must have some independent knowledge of the case outside of what they have acquired from counsel—*see Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 n.18 (5th Cir. 2001)—this Court does not find that the plaintiffs here are entirely without knowledge of the case.  Rather, when read in tandem with their declarations, their deposition testimony suggests that plaintiffs may not be fluent with the legal theories at work, but nevertheless understand the basic factual dimensions of the lawsuit.

Further, the discussion of Setneska's alleged conflict of interest—that he, as a judgment debtor, might wish to settle the case individually rather than participate in the class out of financial self-interest—may, as plaintiffs aver, be legally irrelevant.  But more to the point, on

14

this record Setneska's conflict is completely speculative—and a mere phantasm of conflict is not enough.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (requiring "fundamental" conflict, not "speculative" conflict), *abrogated on other grounds by In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 40–42 (2d Cir. 2006); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 94 n.11 (7th Cir. 1977).

Pressler's attack on proposed class counsel is limited to his failure to discover the pending *DeFazio* litigation, the substance of which will be discussed *infra*.  Otherwise, counsel's declaration, which enumerates the cases in which he has been involved and his experience with FDCPA, goes unrebutted and unchallenged, and contains no evident deficiency.

In sum, the adequacy requirement is met.

### D) Rule 23(b)(3) Inquiry

"If all of the prerequisites of Rule 23(a) are satisfied, a class action may be maintained if the standards set forth in Rule 23(b) are satisfied as well."  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009).  Rule 23(b) presents several possible routes to certification. Under Rule 23(b)(3), which plaintiffs invoke here, a class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The rule also lists an inclusive set of factors to be considered, such as "the class members' interests in individually controlling the prosecution or defense of separate actions," and "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)–(D).

In its recent *Behrend* decision, the Supreme Court reemphasized its prior, cautionary statements regarding certification under Rule 23(b)(3).  Because Rule 23(b)(3) is designed for

15

"situations in which class-action treatment is not as clearly called for" (as compared against the other subsections of 23(b)), a reviewing court is required to take a "close look" at all of the relevant requirements and data before deciding to certify a class under the subsection. *Behrend*, 133 S. Ct. at 1432 (internal quotation marks and citations omitted). In this case, determining whether the 23(b) factors are satisfied requires an examination of the FDCPA statutory framework, which is "intertwined" with issues germane to class certification. *Cf. Vallario v. Vandehey*, 554 F.3d 1259, 1266 (10th Cir. 2009).

First, FDCPA's "civil liability" subsection sets out three different kinds of damages: actual damages, statutory damages (called "additional damages"), and costs. *See* 15 U.S.C. § 1692k(a)(1)–(3); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 578 (2010). "The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998); *accord Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) ("[A] consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages."); *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 354 (D.N.J. 2006) (Hillman, J.). The total award to prevailing plaintiffs is the sum of these three categories. *Id.* § 1692k(a).

"In [the Third] Circuit, statutory damages are not awarded for each violation of the FDCPA. Rather, Section 1692k(a)(2) has been interpreted to authorize an award of no more than $ 1,000 per [individual] plaintiff per lawsuit as statutory damages." *Robertson v. Horton Bros. Recovery, Inc.*, No. 02-1656, 2007 U.S. Dist. LEXIS 48602, at *8 (D. Del. July 3, 2007) (citing *Goodmann v. People's Bank*, 209 F. App'x 111, 114 (3d Cir. 2006) (nonprecedential)); *see also Wright v. Fin. Serv.*, 22 F.3d 647, 650–51 (6th Cir. 1994) (en banc); *Beattie v. D.M. Collections,*

16

*Inc.*, 764 F. Supp. 925, 925 n.1 (D. Del. 1991) (suggesting that multiple plaintiffs bringing suit over a single violation might be limited to a single $1000 statutory award).  By contrast, statutory damages in class actions under FDCPA are treated differently.  Section 1692k(a)(2)(B) provides that prevailing classes receive the sum of 1) the $1000 per individual named plaintiff *and* 2) the lesser of $500,000 or 1% of the debt collector's net worth.  *See McCall v. Drive Fin. Servs., L.P.*, 440 F. Supp. 2d 388, 390 (E.D. Pa. 2006) ("Thus, under a plain reading of this text, the maximum potential liability of a defendant is $ 1,000 multiplied by the number of named plaintiffs plus $ 500,000 . . . .").

Second, FDCPA is, at least in part, a "strict liability" statute.  *Glover*, 698 F.3d at 149; *see also Pace v. Leavitt*, No. 06-2925, 2007 U.S. Dist. LEXIS 6864, at *8 n.4 (D.N.J. Jan. 31, 2007) (Martini, J.).[3]  "[I]t imposes liability without proof of an intentional violation."  *Allen v. LaSalle Bank*, 629 F.3d 364, 368 (3d Cir. 2011).  And for many claims of deceptive conduct under 15 U.S.C. § 1692e, and specifically under § 1692e(10), "evidence of actual deception is unnecessary."  *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 139 (4th Cir. 1996); *see also Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 923 (E.D. Va. 2006) (citing *National Fin. Servs.*).  Further, because FDCPA evaluates the challenged communication from the perspective of the "least sophisticated debtor," *see Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 298 (3d Cir. 2008), a particular plaintiff's actual reliance is not necessary.  *Neild*, 453 F. Supp. 2d at 923.

Turning to the "predominance" requirement of Rule 23(b)(3), "the focus of the [] inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  *Sullivan*, 667 F.3d at 298.

---

[3] 15 U.S.C. § 1692k(c) allows for a debt collector to show by a preponderance that its error was "bona fide."  *See Jerman*, 559 U.S. at 587.

Because of the strict-liability nature of FDCPA, "harm" may be academic, but all the members of the proposed class *by definition* received the challenged letter. *See, e.g.*, *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 U.S. Dist. LEXIS 129587, at *20–22 (D.N.J. Sept. 10, 2013) (Hammer, Mag. J.) (holding that the predominance test was met because "class members and Plaintiff challenge the same allegedly improper debt-collection notice used by Defendants or ones materially identical"). Both Williams and Setneska will abandon their individual claims— and Williams her request for actual damages—if the class is certified. "Because the [proposed] class members here all share a common nucleus of fact—the receipt of nearly identical [settlement] letters—and the viability of their claims turn on a . . . determination as to the conformity of the letters with [FDCPA], the Court finds that this class satisfies Rule 23(b)(3)'s predominance requirement." *Stair v. Thomas & Cook*, 254 F.R.D. 191, 201 (D.N.J. 2008) (Simandle, J.).

      Finally, the superiority requirement is a balancing of the merits of a class action against those of alternative available methods of adjudication. The size of the class is modest and the time span is short, implying no inherent management problems should the class be certified. *Cf. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001). As a practical matter, relitigating an objective test in multiple different actions would be an inefficient use of resources. Further, "there is a strong interest in litigating these claims in a single forum." *Franklin v. Midland Funding, LLC*, No. 3:10 CV 91, 2011 U.S. Dist. LEXIS 89919, 32–33 (N.D. Ohio Aug. 12, 2011). Finally, as this is a case involving predicate New Jersey suits against a north New Jersey defendant, consolidating litigation in this forum is a proper course. *See* Newberg on Class Actions § 4:71 ("Courts have found that class actions in a particular forum are

particularly appropriate when . . . a particular forum is more geographically convenient for the parties . . . or, for example, when the defendant is located in the forum state.").

Rule 23(b)(3)(B) involves the consideration of "the extent and nature of any litigation concerning the controversy already begun by or against class members." A number of cases have been filed against Pressler under FDCPA, showing both interest in and the viability of individual litigation. Several have already resulted in decisions. *See, e.g.*, *Waitkus v. Pressler & Pressler, L.L.P.*, No. 11-6531, 2012 U.S. Dist. LEXIS 27705 (D.N.J. Mar. 2, 2012) (Chesler, J.). Others, both pending and resolved without a decision, can be found on PACER—some brought by the attorney of record here. As intended by Congress, FDCPA is "self-enforcing by private attorney generals," *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004); the existence of multiple suits is a feature, not a bug. With regard to *DeFazio*, it does not appear to be in the class-certification stage at present, and this lawsuit should not be held in abeyance pending developments in *DeFazio*. In such a context, the presence of other litigation does not defeat the wisdom of litigating the present action as a class.

For the above reasons, the Rule 23(b)(3) factors are satisfied.

### IV.  Conclusion

Having conducted a "rigorous analysis" of the Rule 23(a) and (b) factors, the Court concludes that the requirements of the Rule have been met and that certification of plaintiffs' proposed class is proper. An appropriate order will be filed.

Date: September 27, 2013                    /s/ Katharine S. Hayden
                                            Katharine S. Hayden, U.S.D.J